IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IMPLICIT, LLC,

          Plaintiff,

v.

SONOS, INC.,

          Defendant.

C.A. No. 17-cv-259-LPS-CJB

JURY TRIAL DEMANDED

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Implicit, LLC ("Implicit"), for its First Amended Complaint against Defendant

Sonos, Inc. ("Sonos" or "Defendant"), upon information and belief, states and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement arising under the patent laws of the

United States, Title 35 of the United States Code.

2.      As set forth in more detail below, Defendant has been infringing United States

Patent Nos. 7,391,791 (the "'791 Patent") and 8,942,252 (the "'252 Patent") (collectively, the

"Patents-in-Suit"), and continue to do so through the present date.

## THE PARTIES

3.      Implicit is a corporation organized and existing under the laws of the state of

Texas with its principal place of business in Texas.

4.      Upon information and belief, Sonos is a Delaware corporation with its principal

place of business at 419 State St., Santa Barbara, California 93101; and can be served with

process by serving its registered agent for service of process in the state of Delaware, The

Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington,

Delaware 19801.

5.      Unless specifically stated otherwise, the acts complained of herein were

committed by, on behalf of, and/or for the benefit of Sonos.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has personal jurisdiction over Sonos because (a) it has committed the acts of patent infringement complained of herein, including but not limited to offering for sale or selling infringing products embodying Implicit's patented invention, in this State and this District; (b) it has directed its acts of infringement and the other unlawful acts complained of herein at this State and this District; and (c) it is a Delaware corporation.

8.      This Court has personal jurisdiction over Defendant for the additional reason that it has engaged in systematic and continuous contacts with this State and this District by, *inter alia*, regularly conducting and soliciting business in this State and this District, being incorporated in this State, and/or deriving substantial revenue from products and/or services provided to persons in this State and this District.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the acts complained of herein occurred in this District, Defendant transacts business in this District, Defendant resides in this District by way of its incorporation in this District, and/or the property that is the subject of this action is situated in this District.

10.     Venue is proper in this District under 28 U.S.C. §§ 1391(c)-(d) and 1400(b) because (i) Defendant resides in this District by way of its incorporation in this District; and/or (ii) Defendant has committed acts of infringement and has a regular and established place of business in this District.

## FACTUAL ALLEGATIONS

11.     While the precise limitations of the claimed inventions of the Patents-in-Suit are set forth in the claims thereof themselves, the Patents-in-Suit generally disclose a particular method for ensuring the playback of various types of media occurs synchronously across different rendering devices.  The claimed methods provide the means to achieve consistent and accurate synchronization in situations where synchronization was traditionally difficult, *e.g.*,

when the various rendering devices have different or multiple time domains, which can cause the rendering devices to "drift" out of sync.  The claimed methods can for example be used to achieve synchronization between a television and home theater speakers so that the audio output by the speakers is in sync with the video displayed on the television, *i.e.* ensuring there are no lip-sync issues with the dialog on screen.  As another example, the claimed methods can be used to ensure that when multiple speakers are playing the same audio source, the speakers play back the audio in sync with one another so that the listener does not hear any "echo" or "lag" between the rendering of the audio signal at one speaker or speakers as compared to the other(s).  The Patents-in-Suit achieve this improved result by designating one of the rendering devices as a master device that will share rendering information with one or more slave devices.  Based on this information from the master, the rendering at the slave device is adjusted such that it remains in sync with the rendering at the master.

12.     The original assignee of the Patents-in-Suit, Implicit Networks, Inc., was founded in 1996 in Bellevue, Washington by one of the co-inventors of the Patents-in-Suit: Mr. Edward Balassanian.  Mr. Balassanian currently serves as the Manager of Plaintiff Implicit.  Implicit provides software platforms and products that enable original equipment manufacturers ("OEMs") and independent software vendors ("ISVs") to build applications for networks.  Its products include Strongs OS, which enables OEMs and ISVs to build, deploy, and manage applications in the network and on devices that access the networks; and RADkit, a toolkit designed specifically to build applications for network infrastructure and for devices that access the network.

13.     Implicit developed and included synchronization technology in its Strings OS product to playback audio and video at IP-based speakers and displays such that the audio and video information sent to the IP devices would be rendered in sync with the other devices.  Implicit's synchronization technology was used by Intel Corporation in its pioneering Intel Web Tablet and Intel Audio Port (a device that allowed an analog speaker to be used as an IP-based speaker).  Motorola similarly deployed Implicit's synchronization technology as part of its

Stereo Relay product.  As one additional example, Implicit's synchronization technology was used in Thomson's Set-top Box, leading to a best-in-show award at the Consumer Electronics Show.

14.     Sonos provides software, hardware, and services directed to synchronizing the rendering of content at various rendering devices on a network.

15.     For example, as described on Sonos's website, Sonos makes, uses, sells, and deploys a wireless home sound system that allow the grouping of speaking so that the speakers will "play the same music in sync" "and continue to play in sync with each other until you ungroup the speakers using the Sonos app."[1]  Sonos's products utilize a proprietary dedicated wireless mesh network called SonosNet to achieve this functionality, as illustrated and described below.

---

[1] https://sonos.custhelp.com/app/answers/detail/a_id/4002/kw/sync/session/L3RpbWUvMTQ4M TMwMzk1OS9zaWQvZlVzam5hWk1POGQlN0U5N056N1p4bWVqVTJwWk43QWx3VTlrNk xzUmRMWndLZHQ4WUdkWHpDdkRfS2QzOWtpNGxONjNNR3V4ZG40UFFSQzV2UmZv UzVmTVhkUkFyREh1c3dnZDhxb2JYJTdFdXZGYnM1bzRHY3JtdEFfQSUyMSUyMQ%3D %3D (last visited October 3, 2017).

## 3 Wireless Mesh Network

Each Sonos product is network-enabled with Ethernet, wireless interfaces, or both and uses TCP/IP to communicate. You can set up the Sonos Wireless HiFi System wirelessly (standard setup), or by connecting a Sonos product to your router with an Ethernet cable (BRIDGE setup). If you connect a Sonos component to your router, the Sonos system establishes and uses SonosNet, a secure wireless mesh network to communicate and stream music throughout the household. (Connect a BRIDGE to your router if you won't listen to music in this location, or connect a player to have audio available.) If you set up Sonos wirelessly, Sonos components communicate using over the home's wireless network.

SonosNet is a secure, AES-encrypted, peer-to-peer wireless mesh network that provides stable, reliable audio playback.

Sonos components communicate directly with each other, so each component expands the network. Each Sonos product is network enabled with an Ethernet interface, a wireless interface, or both so you can choose to set up the Sonos system to use either SonosNet (by connecting one Sonos product to your router) or your wireless network. If you plug a Sonos product into your router, all of your Sonos components will use SonosNet to communicate with each other.

When the Sonos Wireless HiFi System is set up, a **household** is created. A household is limited to thirty-two components each of which must be on the same IP subnet.

http://musicpartners.sonos.com/sites/default/files/Sonos System Overview.pdf at 7 (last accessed October 3, 2017).

16.    When multiple Sonos devices are thus "grouped" together, one such device acts as the master or coordinator device and other device(s) act as slave device(s).  In this configuration, the master device alone receives audio information from the audio source and is responsible for sending that audio information along to the slave device(s), as set forth below.

This requires that each Sonos component have access to the audio data. In the Sonos architecture, this is achieved by requiring that all Sonos components be members of a player group in order to play audio, and selecting a lead player, called the **group coordinator**, to distribute the audio data to the other group members. Group membership can be changed "on the fly" by linking and unlinking rooms without restriction. This flexibility is achieved by a dynamic handoff of the lead Sonos component role. To ensure the handoff is free from audio interruptions, both existing and new lead components access the same content simultaneously for a limited period of time.

*Id.* at 10.

17.    Upon information and belief, when first plugged in and connected to a network, each Sonos device will perform an NTP sync with a remote server in order to synchronize the device's local date/time to the correct date/time.

18.     Upon information and belief, in a "grouped" configuration, in addition to sending audio data to slave devices, the master Sonos device also sends timing information to slave devices.  Specifically, upon information and belief, approximately every 30 seconds, each slave Sonos device requests and then receives time synchronization information from the master Sonos device in the form of an SNTP poll from the slave device to the master and an SNTP synchronization message sent from the master to the slave.

19.     Upon information and belief, other than as set forth in the preceding paragraphs, communication between the master Sonos device and any slave Sonos device(s) (including without limitation of audio data and any additional synchronization data other than the SNTP communications set forth above) is encrypted using proprietary Sonos encryption and/or encryption keys such that, without access to proprietary Sonos information, one cannot determine the exact contents of any such communications.

20.     Upon information and belief, Sonos implements contractual protections in the form of license agreements and others terms of service with its customers to preclude the unauthorized reproduction, distribution, and/or modification of its software.[2]

21.     Upon information and belief, Sonos implements technical protections to thwart customers who would circumvent the intended operation of Sonos's products.

## <u>COUNT I – INFRINGEMENT OF THE '791 PATENT</u>

22.     Implicit re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

23.     Implicit is the assignee and owner of all right, title, and interest in and to the '791 Patent, which was issued on June 24, 2008.  A true and correct copy of the '791 Patent is attached hereto as Exhibit A.

24.     The '791 Patent is valid and enforceable.

---

[2] *See, e.g.*, https://consumerist.com/2017/08/23/sonos-holds-software-updates-hostage-if-you-dont-sign-new-privacy-agreement.

25.     The '791 Patent addresses an invention for synchronizing content rendering.  This disclosed innovation synchronizes the rendering of content at various rendering devices by each slave rendering device adjusting the rendering of its content to keep it in synchronization with the rendering of that same content at a master rendering device.

26.     Implicit has the exclusive right to make, use, sell, and offer to sell any product embodying the '791 Patent throughout the United States, and to import any product embodying the '791 Patent into the United States.

27.     Implicit has commercially exploited the '791 Patent by making, marketing, selling, and using products covered by the '791 Patent, as well as licensing technology to others that implemented the inventions of the '791 Patent, including in products based on the Strings OS product.

28.     Sonos has had knowledge of Implicit, the '791 Patent, Strings OS-based products embodying the '791 Patent, and Implicit's allegations of Sonos's infringement of the '791 Patent at least as early as the filing of the Original Complaint [D.I. 1] in this action.

29.     As set forth in the following Paragraph Nos. 30–37, Defendant has been, and is currently, directly infringing at least claim 1 of the '791 Patent in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, at least by using its wireless audio/video products supporting synchronized playback, including without limitation SonosNet, One, PLAY:1, PLAY:3, PLAY:5, PLAYBASE, PLAYBAR, SUB, CONNECT, CONNECT:AMP, associated software and applications, and all reasonably similar Sonos products (the "Accused Products").  For example, upon information and belief, when Sonos tests the Accused Products, it uses Accused Products it owns and controls in a configuration including multiple speakers playing audio from a single audio source in synchronization with one another (an "Infringing Configuration"), and thus infringes claim 1 of the '791 Patent.

30.     When the Accused Products are used in an Infringing Configuration, the owner/controller of the Accused Products performs a method for synchronizing a rendering of a content provided by a source at one or more devices which are nodes of a network, the content

having a rendering time.  Specifically, the content provided by a source is the audio being played on the speakers, which comes from a single audio source; the rendering of that audio is synchronized at multiple speakers, which are nodes of a network; and the audio content necessarily has a rendering time, being the time at which it is rendered.

31.    When the Accused Products are used in an Infringing Configuration, the owner/controller of the Accused Products designates one device as a master device, that master device having a master device time and a master rendering time.  Specifically, one of the speakers is designated as the master or coordinating speaker by the audio source; that master or coordinating speaker has a device time (for example, the master speaker must have its own device time in order to synchronize that time with an NTP server) and necessarily has a master rendering time (because it necessarily renders the audio content at that rendering time).

32.    When the Accused Products are used in an Infringing Configuration, the owner/controller of the Accused Products designates remaining devices among the one or more devices as slave devices, where each slave device has a slave device time and a slave rendering time.  Specifically, when the audio source designates one speaker as the master or coordinating speaker, it designates all others as slave speakers; each slave speaker has a device time (for example, the slave speaker(s) must have its/their own device time in order to synchronize that time with an NTP server) and necessarily has a slave rendering time (because it necessarily renders the audio content at that rendering time).

33.    When the Accused Products are used in an Infringing Configuration, the owner/controller of the Accused Products receives the content for rendering by the master and at least one slave device.  Specifically, the audio source sends the audio content to the master or coordinating speaker, which then sends that audio content to all slave devices.

34.    Upon information and belief, when the Accused Products are used in an Infringing Configuration, the owner/controller of the Accused Products sends from the master device to at least one slave device an indication of when the master device renders content corresponding to the master rendering time.  Specifically, the master or coordinating speaker

sends SNTP sync data to the slave speaker(s); furthermore, upon information and belief, the master or coordinating speaker sends additional time synchronization messages to the slave speaker(s) that is encrypted using proprietary Sonos encryption and thus cannot be determined without access to Sonos proprietary information.

35. Upon information and belief, when the Accused Products are used in an Infringing Configuration, the owner/controller of the Accused Products determines a master device time domain, a slave device time domain, and a source time domain. Specifically, upon information and belief, the master Sonos speaker, slave Sonos speaker(s), and audio source each necessarily must have its own time domain (based on for example the internal clock of the processor, chipset, or otherwise used in those devices); and upon information and belief, the Accused Products necessarily must determine those time domains in order to properly synchronize audio playback on multiple speakers.

36. Upon information and belief, when the Accused Products are used in an Infringing Configuration, the owner/controller of the Accused Products determines whether a time domain differential exists between the master rendering time and the slave rendering time. Specifically, upon information and belief, the SNTP sync data and/or additional time synchronization messages referred to in the preceding Paragraphs are used to determine the time domain differential between the rendering times of the master and slave speakers.

37. When the Accused Products are used in an Infringing Configuration, the owner/controller of the Accused Products adjusts, based on the received indication, the rendering of content at the slave speaker(s) within the slave device time domain and in proportion to the time domain differential when present to account for variation between when the master device and the at least one slave device to render content that should be rendered at the same time. Specifically, upon information and belief, the SNTP sync data and/or additional time synchronization messages referred to in the preceding Paragraphs, as well as the computed time domain differential referred to in the preceding Paragraph, are used by the slave speaker(s) to

adjust the timing of its/their playback in order to more closely synchronize the playback of content that is intended to be played by in synchronization.

38.     Defendant will, on information and belief, continue to directly infringe the '791 Patent unless enjoined.

39.     Defendant actively encourages its customers to use Defendant's Accused Products in an infringing manner (e.g., in an Infringing Configuration).  For example, Defendant's website is replete with written directions, screenshots, and videos instructing users on how to use the Accused Products in an infringing manner and in an Infringing Configuration.[3]

40.     Defendant's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

41.     Upon information and belief, and particularly by way of the detailed documentation instructing users on how to use the Accused Products in an infringing manner, Defendant has encouraged this infringement with knowledge of the '791 Patent and with a specific intent to cause its customers and distributors to infringe.

42.     As just one example, Inspirato uses Sonos's Accused Products in an infringing manner—in an Infringing Configuration—as set forth above and is thus a direct infringer.[4] Sonos induces Inspirato's infringement as set forth herein.

43.     Defendant will, on information and belief, continue to induce infringement of the '791 Patent unless enjoined.

44.     Defendant's direct infringement and inducement of infringement have irreparably harmed Implicit.

45.     Defendant will, on information and belief, continue to irreparably harm Implicit unless enjoined.

---

[3] *See, e.g.*, *supra* ¶¶ 15–16; https://sonos.custhelp.com/app/answers/detail/a_id/4002/~/how-to-group-rooms-in-the-sonos-app.
[4] *See* https://www.inspirato.com/benefits/partner-programs#sonos.

46.     Pursuant to 35 U.S.C. § 284, Implicit is entitled to damages adequate to compensate for the infringement but in no event less than a reasonable royalty.

47.     Defendant's infringement has been and is willful and, pursuant to 35 U.S.C. § 284, Implicit is entitled to treble damages.

48.     This case is "exceptional" within the meaning of 35 U.S.C. § 285, and Implicit is entitled to an award of attorneys' fees.

## COUNT II – INFRINGEMENT OF THE '252 PATENT

49.     Implicit re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

50.     Implicit is the assignee and owner of all right, title, and interest in and to the '252 Patent, which was issued on January 27, 2015.  A true and correct copy of the '252 Patent is attached hereto as Exhibit B.

51.     The '252 Patent is valid and enforceable.

52.     The '252 Patent addresses an invention for synchronizing content rendering.  This disclosed innovation synchronizes the rendering of content at various rendering devices by each slave rendering device adjusting the rendering of its content to keep it in synchronization with the rendering of that same content at a master rendering device.

53.     Implicit has the exclusive right to make, use, sell, and offer to sell any product embodying the '252 Patent throughout the United States, and to import any product embodying the '252 Patent into the United States.

54.     Implicit has commercially exploited the '252 Patent by making, marketing, selling, and using products covered by the '252 Patent, as well as licensing technology to others that implemented the inventions of the '252 Patent, including in products based on the Strings OS product.

55.      Sonos has had knowledge of Implicit, the '252 Patent, Strings OS-based products embodying the '252 Patent, and Implicit's allegations of Sonos's infringement of the '252 Patent at least as early as the filing of the Original Complaint [D.I. 1] in this action.

56.     As set forth in the following Paragraph Nos. 57–60, Defendant has been, and is currently, directly infringing at least claim 11 of the '252 Patent in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, at least by using its wireless audio/video products supporting synchronized playback, including without limitation SonosNet, One, PLAY:1, PLAY:3, PLAY:5, PLAYBASE, PLAYBAR, SUB, CONNECT, CONNECT:AMP, associated software and applications, and all reasonably similar Sonos products (the "Accused Products").  For example, upon information and belief, when Sonos tests the Accused Products, it uses Accused Products it owns and controls in an "Infringing Configuration", and thus infringes claim 11 of the '252 Patent.

57.     When the Accused Products are used in an Infringing Configuration, the owner/controller of the Accused Products receives, at a slave device, a particular content stream. Specifically, the content stream provided is the audio being played on the speakers; the audio source sends the audio content to the master or coordinating speaker, which then sends that audio content to all slave devices.

58.     Upon information and belief, when the Accused Products are used in an Infringing Configuration, the owner/controller of the Accused Products receives, at the slave device from a master rendering device, a plurality of master rendering times indicative of the status of rendering a different content stream at the master rendering device.  Specifically, the master or coordinating speaker sends SNTP sync data to the slave speaker(s); furthermore, upon information and belief, the master or coordinating speaker sends additional time synchronization messages to the slave speaker(s) that is encrypted using proprietary Sonos encryption and thus cannot be determined without access to Sonos proprietary information.  Upon information and belief, this SNTP sync data and/or these additional time synchronization messages constitute master rendering times indicate the status of the master or coordinating speaker's rendering of its own copy (a different content stream) of the same piece of audio.

59.     Upon information and belief, when the Accused Products are used in an Infringing Configuration, the owner/controller of the Accused Products determines at the slave

device a smoothed rendering time differential that exists between the master rendering device and the slave device, wherein the determining is based on calculations using the plurality of master rendering times and a plurality of slave rendering times corresponding to rendering the particular content stream at the slave device.  Specifically, upon information and belief, the SNTP sync data and/or additional time synchronization messages referred to in the preceding Paragraphs are used by the slave speaker(s), along with slave rendering times computed at the slave speaker(s), to determine a smoothed rendering time differential that will be used to synchronize playback between the master speaker and slave speaker(s).

60.     Upon information and belief, when the Accused Products are used in an Infringing Configuration, based on the smoothed rendering time differential, the owner/controller of the Accused Products renders at the slave device the particular content stream synchronously with the master rendering device rendering the different content stream.  Specifically, upon information and belief, the determined smoothed rendering time differential referred to in the preceding Paragraphs is used to render at the slave speaker its audio stream in synchronization with the master speaker's rendering of its own audio stream.

61.     Defendant will, on information and belief, continue to directly infringe the '252 Patent unless enjoined.

62.     Defendant actively encourages its customers to use Defendant's Accused Products in an infringing manner (e.g., in an Infringing Configuration).  For example, Defendant's website is replete with written directions, screenshots, and videos instructing users on how to use the Accused Products in an infringing manner and in an Infringing Configuration.[5]

63.     Defendant's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

64.     Upon information and belief, and particularly by way of the detailed documentation instructing users on how to use the Accused Products in an infringing manner,

---

[5] *See, e.g.*, *supra* ¶¶ 15–16; https://sonos.custhelp.com/app/answers/detail/a_id/4002/~/how-to-group-rooms-in-the-sonos-app.

- 13 -

Defendant has encouraged this infringement with knowledge of the '252 Patent and with a specific intent to cause its customers and distributors to infringe.

65.     As just one example, Inspirato uses Sonos's Accused Products in an infringing manner—in an Infringing Configuration—as set forth above and is thus a direct infringer.[6] Sonos induces Inspirato's infringement as set forth herein.

66.     Defendant will, on information and belief, continue to induce infringement of the '252 Patent unless enjoined.

67.     Defendant's direct infringement and inducement of infringement have irreparably harmed Implicit.

68.     Defendant will, on information and belief, continue to irreparably harm Implicit unless enjoined.

69.     Pursuant to 35 U.S.C. § 284, Implicit is entitled to damages adequate to compensate for the infringement but in no event less than a reasonable royalty.

70.     Defendant's infringement has been and is willful and, pursuant to 35 U.S.C. § 284, Implicit is entitled to treble damages.

71.     This case is "exceptional" within the meaning of 35 U.S.C. § 285, and Implicit is entitled to an award of attorneys' fees.

## DEMAND FOR JURY TRIAL

Implicit hereby demands a trial by jury of all issues so triable under Federal Rule of Civil Procedure 38(b).

## PRAYER FOR RELIEF

WHEREFORE, Implicit respectfully requests that this Court:

A.     Find that United States Patent No. 7,391,791 is valid and enforceable against Defendant;

---

[6] *See* https://www.inspirato.com/benefits/partner-programs#sonos.

B.      Find that Defendant has infringed and is infringing United States Patent No. 7,391,791;

C.      Permanently enjoin Defendant, its officers, agents, servants, employees, and those persons acting in active concert or in participation therewith from infringing United States Patent No. 7,391,791;

D.      Award Implicit damages sufficient to compensate it for Defendant's past and future infringement of United States Patent No. 7,391,791, together with costs and prejudgment and postjudgment interest, pursuant to 35 U.S.C. § 284;

E.      Find that United States Patent No. 8,842,252 is valid and enforceable against Defendant;

F.      Find that Defendant has infringed and are infringing United States Patent No. 8,942,252;

G.      Permanently enjoin Defendant, its officers, agents, servants, employees, and those persons acting in active concert or in participation therewith from infringing United States Patent No. 8,942,252;

H.      Award Implicit damages sufficient to compensate it for Defendant's past and future infringement of United States Patent No. 8,942,252, together with costs and prejudgment and postjudgment interest, pursuant to 35 U.S.C. § 284;

I.      Order an accounting of damages from Defendant's infringement;

J.      Award Implicit enhanced damages, up to and including trebling Implicit's damages, pursuant to 35 U.S.C. § 284, for Defendant's willful infringement of the Patents-in-Suit;

K.      Award Implicit its reasonable attorney fees and costs of suit pursuant to 35 U.S.C. § 285 due to the exceptional nature of this case, or as otherwise permitted by law; and

L.      Award Implicit such other or additional relief as the Court deems just and proper.

Dated: October 6, 2017

Of Counsel:

Benjamin L. Singer
Adam S. Cashman
James Hopenfeld
Walter C. Pfeffer
Evan N. Budaj
Singer / Bea LLP
601 Montgomery Street, Suite 1950
San Francisco, California 94111
(415) 500-6080
bsinger@singerbea.com
acashman@singerbea.com
jhopenfeld@singerbea.com
wpfeffer@singerbea.com
ebudaj@singerbea.com

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19806
(302) 777-0300
(302) 777-0301 (fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

**ATTORNEYS FOR PLAINTIFF
IMPLICIT, LLC**